## Holliday, Appellant, *v.* Booth & Flinn, Ltd.

*Negligence—Contributory negligence—Falling over line of water
pipe.*

Where a firm of contractors engaged in raising a grade of a
street by a fill, lay a line of water pipe for the purpose of their
work along the sloping surface of the fill, and the people in the
neighborhood for their own convenience and for the purpose of
avoiding a detour around a block or two, make a path along the
fill and over the water pipe, and a woman who was perfectly
familiar with the path and had helped to make it, walks along the
path and over the water pipe on a very dark night, and trips and
falls over the pipe and is injured, she is guilty of contributory
negligence, and cannot recover damages from the contractor for
her injuries.

Argued May 5, 1915. Appeal, No. 200, April T., 1915,
by plaintiff, from judgment of C. P. Allegheny Co., April
T., 1913, No. 652, for defendant n. o. v. in case of Anna
Holliday v. Booth & Flinn, Ltd. Before RICE, P. J.,
ORLADY, HEAD, PORTER, HENDERSON and TREXLER, JJ.
Affirmed.

Trespass to recover damages for personal injuries. Before EVANS, J.

At the trial the jury returned a verdict in favor of the plaintiff for $975. Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*Walter P. Smart,* with him *L. K. & S. G. Porter,* for appellant.—The case was for the jury: Tucker v. Pittsburgh, Cincinnati, Etc., Ry. Co., 227 Pa. 66; McManamon v. Hanover Twp., 232 Pa. 439; Musselman v. Hatfield Borough, 202 Pa. 489; Switzer v. Pittsburgh, 54 Pa. Superior Ct. 183; Cousins v. Warren Borough, 54 Pa. Superior Ct. 136; Evans v. Philadelphia, 205 Pa. 193; Steck v. Allegheny, 213 Pa. 573; Shetulski v. Mt. Carmel Boro., 57 Pa. Superior Ct. 85.

*John S. Weller,* for appellee.—A person who knows of a defect in a highway, and voluntarily undertakes to test it, when it could be avoided, cannot recover for losses incurred through such defects: Crescent Twp. v. Anderson, 114 Pa. 643; Hill v. Tionesta Twp., 146 Pa. 11.

Where a person having a choice of two ways, one of which is reasonably safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, such person is guilty of contributory negligence and cannot recover: Percell v. Riebe, 227 Pa. 503; Smith v. New Castle, 178 Pa. 298; Rathacker v. Philadelphia, 42 Pa. Superior Ct. 408.

OPINION BY HEAD, J., March 1, 1916:

The plaintiff brought this action to recover damages for personal injuries alleged to have been caused by the negligent act of the defendants. Following a submission of the case at the conclusion of the trial the jury re-

turned a verdict for the plaintiff. Upon consideration of the whole of the testimony, and after argument of a motion for judgment n. o. v., the learned trial judge reached the conclusion that the testimony of the plaintiff clearly convicted her of contributory negligence and accordingly entered judgment for the defendant. The plaintiff appeals. Although the legal principles that must control the disposition of the countless cases of this character are few and simple, the facts of each particular case distinguish it from almost every other of the same kind, and as a consequence the result in each case follows from the application of the same legal principles to a constantly differing state of facts.

It needs but a glance at the peculiar facts presented by this record to convince any one that it is practically in a class by itself. The many cases which have dealt with injuries sustained by foot passengers on the sidewalks or cartways of open traveled streets in a city or borough can be of but little use in the disposition of the situation before us.

Fifth street in the City of Pittsburgh runs north and south. It crosses at right angles West Carson street running east and west. The city ordained a considerable change in the grade of Carson street and the present defendants contracted to do the necessary work. The newly established grade required that Carson street be raised at the point where it crosses Fifth street by a fill which, according to the testimony, was from five to eight feet high. The construction of this fill necessarily closed for travel that portion of Fifth street occupied by the bed of Carson street. The work progressed through a considerable period of time, and the fact that Fifth street was not open for travel at that point was patent, visible to the eye and known to everybody in the vicinity. In performing the work ordained by the city, the contractor necessarily used a considerable amount of concrete, for the mixing of which a constant supply of water was required. To furnish this supply the contractor

laid a water line along the side of the dump or fill which, according to the verdict, reached and crossed the closed end of Fifth street. The line was laid along the sloping surface of the bank of the fill. The plaintiff alleges that this pipe crossed a footpath that had been made by the people of the vicinity to enable them to make a short cut up the slope as it was being constructed in order to reach the surface of Carson street. She testifies that she was familiar with the work as it progressed; that she saw the pipe line frequently and knew where it was located. On a certain evening she concluded to visit one of her neighbors and used this path to enable her to reach Carson street instead of making a longer detour around a block or two that would have enabled her to avoid the use of the path. She stepped over the pipe line and reached her destination. When she later undertook to return, she says it was extremely dark and in her attempt to descend the slope of the fill along this path, she tripped over the pipe, fell, and was injured.

Now it is clear that the city, in determining to raise the grade of Carson street, was exercising one of the ordinary municipal powers. Either the city or its contractor would have the right to do that work in the usual and ordinary manner in which such work is done. Of course, when the work of construction began there was no path. The plaintiff's witness, her own son-in-law, clearly testifies that this path was made by himself and the other immediate residents there to accomplish a short cut to the surface of Carson street. He declares, and no one denies his statement, that when they started to make the path, the water line was already there lying along the shoulder of the fill. We quote two or three questions and answers from his testimony: "Q.—The path you spoke about was one that the people beat down themselves that crossed there, was it? A.—Yes, sir. Q.—And that had been made there during the time they were raising West Carson street? A.—Yes, sir. Q.— And was the pipe there at the time? A.—It was from

the time they put it down.  Q.—In the same position, was it?  A.—Well, it was until they took it away.  Q.—Well now then the people, in getting off West Carson beat a path across the street to the west side?  A.—Yes, sir.  Q.—And they would walk across this pipe, wouldn't they?  A.—Yes, sir."  It is thus clearly apparent that neither the city nor the defendants had anything to do with the construction of this path and there was no invitation extended by either to the people to use it.  When the pipe line was laid the path was not in existence, and the laying of the line could in no sense be considered a negligent act.  When a few people, for their own convenience, undertook to travel up the slope of this unfinished fill and cross the pipe line in their way, can it be seriously argued this imposed, either on the city or its contractor, the duty to remove or bury the pipe.  Every one who undertook to climb that slope while the work was under construction knew of the pipe line.  They were those who made the path.  They chose for themselves the place where the trail should cross the pipe line.  This plaintiff, according to her own testimony, was fully cognizant of its location.  She declares she regarded it as dangerous, especially in the night time, and yet, without any necessity or duty impelling her, she chose an extremely dark night to essay the ascent and descent of this sloping path along the shoulder of a bank which she knew to be crossed by the pipe line.  As we view it, the plainest dictates of prudence would have required her, under such circumstances, either to remain at home during the hours of extreme darkness, to take a longer detour, even if it should be a block or two, which would have enabled her to avoid the use of the path, or to adopt such unusual precautions in the way of carrying a light, a stick, or otherwise, as would have enabled her to locate the pipe line before she stumbled over it.

Neither the industry of counsel nor our own has enabled us to find any case which we think would permit her to recover under this peculiar state of facts.  The

one most nearly resembling it, as we view it, would be Switzer v. Pittsburgh, 54 Pa. Sup. Ct. 183. The marked distinction between that case and the present one, however, clearly appears in the following extract from the opinion of Judge HENDERSON: "The duty of the city to maintain the walk in a reasonably safe condition for public travel cannot be successfully denied as it appears to have been on a street for many years, a laid out street and closely built up on the hill and connecting with a very busy district at the lower end of the street. The complaint is that with notice that this walk was used in the manner described a pitfall was permitted to remain near to the walk in a structure built by the city." In that case the city laid out and opened a street sloping down the side of a hill. For a long time before that the way had been traveled by many people and a well-worn path thus created. When the city opened the street this pathway was within its limits. The city constructed a sewer under this street and placed a manhole close beside this traveled way. A cover was provided for the opening, but in the course of time was removed or lost, and the evidence showed this large opening, constructed by the city itself, was permitted for some months to remain uncovered. The ground of the city's liability was clear. In the present case the city practically closed a portion of one of its public streets in order that it might improve the same. As the fill rose in height it of course created some temporary inconvenience to those residing in the vicinity, although the contemplated improvement was for their benefit. They, not willing to await the completion of the improvement or to take the necessary time to follow another way, chose, at their own risk, to make a way of their own along the shifting slope of the work under construction. Under these circumstances, it is the judgment of this court the plaintiff was not entitled to recover. The learned court below was therefore right in entering a judgment for the defendants and it should not be disturbed.

Judgment affirmed.